# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **HOSPICE COMPLETE, INC.** | ] | |
| Plaintiff, | ] ] ] | |
| v. | ] ] | **CV-09-BE-2398-S** |
| **KATHLEEN SEBELIUS,** | ] ] | **CV-09-BE-2399-S** |
| Defendant | ] ] ] ] | |

## MEMORANDUM OPINION

This matter is before the court on "Plaintiff's Emergency Motion for Stay of Outstanding Cap Repayment Demands Pending Judgment" (doc. 16) with an evidentiary supplement (doc. 17). In the underlying actions, Plaintiff Hospice Complete seeks, among other things, a declaration that Medicare regulation 42 C.F.R. § 418.309(b)(1) is invalid and that Medicare's prior calculations of Hospice Complete cap amounts for Fiscal Years 2006 and 2007 pursuant to that regulation are incorrect. The court held a conference the day after the motion was filed and was subsequently advised that the issue of whether to stay the relevant cap repayment demands was no longer one requiring emergency action, because Defendant HHS had agreed to a brief delay in enforcing those demands. HHS has responded to the motion (doc. 20) and Hospice Complete has replied (doc. 21). The court must determine whether to stay the Fiscal Years 2006 and 2007 cap repayment demands at issue in this appeal, *as well as* demands from Fiscal Years 2008 and 2009 and any future demands that are not part of this appeal but are part of this

motion's request.

    I. Article III Standing

HHS challenges Hospice Complete's standing to bring this case. Because federal court jurisdiction under Article III of the United States Constitution is limited to "actual cases or controversies," and one element of the case-or-controversy requirement is standing to sue, Hospice Complete must first establish that it is the proper party to bring this suit. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish Article III standing, a plaintiff must satisfy three elements: "(1) 'the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;' (2) 'there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;' and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Florida Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In the instant case, Hospice Complete asserts an "injury-in-fact" because it alleges that the amounts of the cap repayment demands were calculated using a method different than the method Congress specified by law. *See Larson v. Valente*, 456 U.S. 228, 241-42 (1982) (holding that plaintiff was injured by application of an allegedly unconstitutional statute); *see also Lion Health Servs., Inc. v. Sebelius*, 689 F. Supp. 2d 849, 855 (N.D. Tex. 2010) (finding that injury-in-fact results from the application of an allegedly unlawful regulation). The court finds that the injury is not conjectural or hypothetical but is concrete and particularized, actual and imminent,

in light of the demands to repay amounts determined based on the allegedly invalid statute. Thus, this element is satisfied. Further, the court finds the causation element to be satisfied because Hospice Complete's injury is fairly traceable to the Secretary's promulgation of the allegedly unlawful regulation. Finally, a favorable decision will redress Hospice Complete's injury because if the court invalidates § 418.309(b)(1), the Secretary cannot use it to calculate cap repayments for Hospice Complete. Therefore, the court rejects HHS's argument regarding standing and finds that all elements are satisfied. *See* other district court cases finding article III standing in similar cases where hospice providers challenged the same regulation: *e.g., Autumn Light Hospice v. Sebelius,* CV 09-0178, 2010 WL 988470, at *2 (W.D. Okla. March 12, 2010); *Lion Health*, 689 F. Supp. 2d at 855; *Tri-County Hospice, Inc., v. Sebelius*, ___ F. Supp. 2d _____, 2010 WL 784836, at *2-3 (E.D. Okla. March 8, 2010); *Hospice of N.M., LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1287-88 (D.N.M. 2010).

II.  Cap Repayment Demands

Having resolved the issue of standing, the court next addresses which cap repayment demands are properly the subject of a stay. Because one of the consolidated suits underlying the motion focuses primarily on the cap repayment demand for Fiscal Year 2007, HHS does not object to any request for a stay of that demand, at least to the extent Hospice Complete is able to meet the standard for injunctive relief, discussed later in this opinion. However, it does object to the inclusion in any such stay of cap repayment demands for other fiscal years, as further discussed below.

A.  Cap Repayment Demand for Fiscal Year 2006

One of the suits underlying this motion, CV-09-2399, does focus primarily on the cap

repayment demand for Fiscal Year 2006. HHS asserts that the *original* cap repayment demand for Fiscal Year 2006 was never timely appealed and is not properly before this court, so that the only part of the 2006 demand that could be appealed is the difference between the original and revised demands: an additional *revised* demand of $21,913. It further asserts that the *revised* cap repayment demand for that year is not based on the regulation being challenged, and thus, is also not properly a part of this suit and not properly included in any corresponding stay.

Hospice Complete acknowledges that the original 2006 cap demand was not appealed. However, it argues that when HHS subsequently *reopened* and *revised* the cap demand for Fiscal Year 2006 to re-figure the hospice cap repayment amount, it placed at issue the accuracy of original and revised 2006 cap demand amounts for appeal purposes.

The regulation addressing the effect of a revision is 42 C.F.R. § 405.1889, which reads in relevant part:

> (a) If a revision is made . . ., the revision must be considered a separate and distinct determination. . . .
> (b)   (1) Only those matters that are specifically revised in a revised determination or decision are within the scope of any appeal of the revised determination or decision.
>        (2) Any matter that is not specifically revised (including any matter that was reopened but not revised) may not be considered in any appeal of the revised determination or decision).

In the instant case, the 2006 cap amount was reopened and revised, resulting in a revised demand of an additional $21,913 for a total of $842,403. In light of the revision, the court must determine whether the revision opens up the entire 2006 cap demand of $842,403 to appeal or limits the appeal to the $21,913 difference between original ($820,490) and revised ($842,403) demand figures. The court notes that the 2006 cap amount was reopened and re-figured and,

rather than being closed again without revision, the amount was indeed revised. That revision constitutes a determination separate and distinct from the original one for the purposes of appeal. Consequently, the court agrees with Hospice Complete that the entire 2006 revised cap demand amount ($842,403) is properly the subject of an appeal.

As guidance and support for its contrary position, HHS cited one case, but that case does not provide clear assistance in this context. The court would invite HHS to provide by July 27, 2010 more definitive support for its position on this issue, if any exists, and also to present further briefing on the issue whether the revision of Fiscal Year 2006 cap demand was performed pursuant to a different regulation than the one challenged here; HHS's responsive brief states that the regulation relevant to the revision was 42 C.F.R. § 418.309(b)(2), not § 418.309(b)(1). (Def.'s Resp. Br., doc. 21, at 19). Hospice Complete's response, if any, is due on or before August 10, 2010. However, the court acknowledges the approaching end of the period during which HHS had agreed to delay enforcing its demands. Consequently, the court finds that at this juncture with those issues unresolved, both the original and revised cap repayment demands for Fiscal Year 2006 are properly included in the stay requests.

      B.  Cap Demands for Fiscal Years 2008 and 2009

HHS also objects to the inclusion of cap repayment demands for Fiscal Years 2008 and 2009 in the stay requests, because those cap repayment demands are not at issue in this appeal. Although Hospice Complete acknowledges that those demands are not at issue in this appeal, it states that it has initiated the appeals process for the 2008 Fiscal Year demands, challenging the same regulation at issue in this case, and will timely appeal the 2009 Fiscal Year demands with the same challenge. It notes that other courts have issued stays on repayment of subsequent fiscal

years in similar situations. *See, e.g., Zia Hospice, Inc. v. Sebelius,* No. 09-CV-55 (D.N.M. Mar. 30, 2010) (doc. 16-6) (issuing a stay of the enforcement of "any demand for repayment (based on any past, present or future accounting year) including any contractual demands, that HHS may attempt to make or collect pursuant to 42 C.F.R. § 418.309(b)(1)"); *IHG Healthcare, Inc. v. Sebelius*, No. 09-CV-3233 (S.D. Tex. April 1, 2010) (granting stay of a new 2008 cap repayment demand, noting that the hospice "has not had time to file an administrative challenge to the 2008 demand, its time to do so has not expired and it is clear [the hospice] intends to challenge this and any future attempts by HHS to enforce what it alleges is an invalid regulation") (doc. 16-7).

This court finds that, if Hospice Complete otherwise meets the standard for injunctive relief, as discussed below, then the cap repayment demands for Fiscal Years 2008 and 2009 are properly included in the stay; Hospice Complete has timely initiated the appeals process for the 2008 demands, the time has not expired for the 2009 demands but it has expressed its intention to appeal, and the basis for the appeal of those demands is the same as the appeals before the court. For the same reason, if Hospice Complete otherwise meets the standard for injunctive relief, then the court will include in the stay cap repayment demands that HHS may attempt to make against Hospice Complete for present and future fiscal years pending a decision on the merits, provided those demands are made pursuant to 42 C.F.R. § 418.309(b)(1).

III.  Standard for Issuing Stay

This court has authority to stay HHS's enforcement of the repayment demands pursuant to Federal Rule of Civil Procedure 65 and the Administrative Procedure Act, 5 U.S.C. § 705 (authorizing a stay pending agency review to preserve the status quo) if Hospice Complete has met its burden to show that injunctive relief is appropriate.  A plaintiff seeking such relief "must

establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, ___ U.S. ___, 129 S. Ct. 365, 374 (2008).

The court finds that Hospice Complete has a substantial likelihood of success on the merits. Multiple United States district courts around the country have addressed the validity of the regulation that Hospice Complete challenges, found that it failed the first step of a *Chevron*[1] analysis in running counter to the clear intent of Congress, and thus, determined that it is facially invalid. *See, e.g.*, *Lion Health,* 689 F. Supp. 2d at 856 (stating that "[t]he court need not proceed past the first step of the *Chevron* analysis" and finding that Congressional intent is clear and unambiguous, and that "§ 418.309(b)(1) clearly does not follow the method described in [the statute]"); *Los Angeles Haven Hospice, Inc. v. Sebelius*, No. 08-4469, doc. 50, at 8 (C.D. Cal. filed 2008); *Tri-County Hospice*, ____ F. Supp. 2d ____, 2010 WL 784836, at *3 (Consolidated) (E.D. Ok. March 8, 2010) (quoting with approval the conclusion in *Lion Health)*; *Hospice of N.M., LLC, v. Sebelius*, No. 09-145, 2010 WL 773229, at *15 (D.N.M. Mar 5, 2010) (finding at *Chevron* step one that Congress's intent was "clear and unambiguous" and that " 42 C.F.R. § 418.309(b)(1) does not comport with that intent"). Although neither the Supreme Court nor the Eleventh Circuit, nor indeed any federal courts of appeal, have yet addressed this issue and

---

[1]In *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), the Supreme Court set out the analysis for a court to use when reviewing an agency's construction of a statute that it administers. The court must first address "the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter. . . .[I]f the statute is silent or ambiguous with respect to the specific issue the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

provided guidance to this court, the unanimity of the district court decisions on this issue supports a finding that Hospice Complete is likely to succeed on the merits.  Further, this court's preliminary perusal of the matter causes it to agree that the likelihood of success is substantial.

      The second element that Hospice Complete must prove is the likelihood that it will suffer irreparable harm.  In support of its claim of irreparable harm should the court not stay this matter, Hospice Complete presents the affidavit of Sara Litwin, Human Resource Administrator for Hospice Complete.  The affidavit states that it is making payments of $46,424.08 per month on the demands for Fiscal Years 2006, 2007, and 2008, and has paid approximately $709,344.00 to date in principal and interest on the 2006 demand, $234,660.32 to date in principal and interest on the 2007 demand, and $38,363.24 to date in principal and interest on the 2008 demand.  Ms. Litwin also states that Hospice Complete employs approximately 75 individuals, and is making demand repayments first before making payroll.  Further, she states that because of the priority of the demand repayments, Hospice Complete is now behind on its payments to vendors.  HHS responds that financial harm alone does not constitute irreparable harm and that if the regulation is declared invalid and if Hospice Complete has overpaid, HHS can make it whole with a payment of interest.

      The court finds, however, that any future payment of interest would not make Hospice Complete whole if it currently fails to pay vendors with all of the attendant risks of bad credit, bad business relations, potential collection suits, inability to obtain the products needed for terminally ill hospice patients, being forced out of business, etc.  The court further notes the threat to the ability to make payroll and the 75 employees currently depending upon that payroll, as well as the disruption to those the hospice serves, who are suffering through a particularly vulnerable and

often agonizing period. HHS states rather cavalierly that the hospice patients have other hospice and treatment options in the Birmingham area, but this argument ignores the realities of this particular patient population; requiring the terminally ill to change care-givers is not easy or insignificant and a lag in treatment during the care-giver change at this crucial time could be an excruciating ordeal for the patient and his or her family. The court also acknowledges HHS's argument that businesses structuring themselves to depend upon public dollars must accept the corresponding burdens and demanding standards associated with obtaining that government funding; however, the court suggests that those burdens should not include paying the government incorrect amounts of money based upon an invalid regulation, if this court indeed finds 42 C.F.R.§ 418.309(b)(1) to be invalid, to the detriment of the community it serves. In light of the information presented, the court finds that Hospice Complete has presented evidence that it will likely suffer irreparable harm without the stay.

      The court has also weighed the equities in this case and finds that the equities tip in favor of Complete Health. The court acknowledges the government's strong interest in conserving scarce Medicare funds. However, the instant case involves amounts to be *repaid* to HHS; HHS has already paid the challenged dollars to Hospice Complete and Hospice Complete has already repaid a significant portion. Although HHS would not receive additional repayments from Hospice Complete while the court is considering the motion on the merits in this case, that motion will be under submission as of July 13, 2010. The short period of maintaining the *status quo* pending a decision on the merits undoubtedly could inconvenience HHS, but the alternative would represent a heavier burden on Hospice Complete for the reasons alluded to above.

      The final element Hospice Complete must prove focuses on the public interest. HHS

raises the public interest in the effective administration of the Medicare Program and in the fiscal integrity of the Medicare program.  However, problems with the effective administration of the Medicare Program and its fiscal integrity are the crux of this case.  The institution of a stay while the court addresses those alleged problems is also in the public interest.  As Hospice Complete pointed out in its reply brief, the Medicare Act, enacted by the public's elected representatives, provides that a beneficiary is entitled to an *unlimited* number of days of hospice care.  *See* 42 U.S.C. § 1395d(d)(1).  If HHS is indeed implementing a reimbursement scheme contrary to the express language of the Medicare Act, then proceeding with payments calculated under such scheme does not truly enhance the effective administration of the Medicare Program.  Given the nature of the challenge raised, maintaining the *status quo* pending a decision on the merits makes more sense.  Similarly, fiscal integrity would be more likely to be enhanced by maintaining the *status quo* during the pendency of the decision on the merits rather than requiring Hospice Complete to make repayments that may well be for incorrect amounts and result in HHS then repaying the repayments.  The court finds that a stay is in the public interest.

      Accordingly, the court finds that Hospice Care has met its burden based on the standard for imposing injunctive relief and that an injunction is due to be granted, enjoining the Secretary from enforcing the following cap repayment demands against Hospice Complete: the original Fiscal Year 2006 Demand, the Revised Fiscal Year 2006 Demand, the Fiscal Year 2007 Demand, the Fiscal Year 2008 Demands, the recently issued Fiscal Year 2009 Demands, and any demand for repayment based on any present or future accounting year.  Contemporaneously with this

Memorandum Opinion, the court will enter a separate, consistent Order.

    Dated this 13th day of July, 2010.

                                                            _____
                                                            KARON OWEN BOWDRE
                                                            UNITED STATES DISTRICT JUDGE